FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★    JUN 16 2025    ★

LONG ISLAND OFFICE

RECEIVED
[JUN 16 2025
EDNY PRO SE OFFICE

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF NEW YORK

HELENE ANDREADAKIS,

REC'D IN PRO SE OFFICE
JUN 16 '25 PM 12:07

Plaintiff,

-against-

JUSTICE JEFFREY A. GOODSTEIN, in his official

and individual capacities;

THOMAS ANDREADAKIS a/k/a

TOMMY ANDREADAKIS a/k/a

TOM ANDREADAKIS a/k/a

TOM TELEMAHOS ANDREADAKIS,

in his individual capacity;

LEO ANDREADAKIS a/k/a

LEONIDAS ANDREDAKIS, in his individual capacity;

COPPER SERVICES LLC;

PARAMOUNT SERVICES OF NY LLC;

ACQUISITION CAPITAL LLC;

ACQUISITION DEBT BRIDGE LLC;

CITY OF NEW YORK DEPARTMENT OF FINANCE;

JOHN DOES 1–5, court staff sued in their individual

capacities, names presently unknown;

Defendants.

COMPLAINT FOR VIOLATION

OF CIVIL RIGHTS

DECLARATORY AND

INJUCTIVE RELIEF

Case No. _____

Jury Trial: No

# 2:25-cv-3372-GRB-ST
# Brown, J.
# Tiscione, MJ.

Plaintiff Helene Andreadakis, appearing pro se, alleges as follows:

**PRELIMINARY STATEMENT**

This case arises from a coordinated scheme of financial concealment, judicial suppression, and
post-conviction asset diversion orchestrated by Defendant Thomas Andreadakis, carried out
by his son and financial agent, Defendant Leo Andreadakis, through corporate entities

including Copper Services LLC, and protected through inaction by Justice Jeffrey A. Goodstein of the New York State Supreme Court. At the center of the scheme was Plaintiff—used for decades as a silent proxy while Tom controlled every financial decision through coercion, only to be blamed, excluded, abused, and targeted when the system began to close in.

Leo Andreadakis, acting as the public face and operational head of successor entities including Paramount Services of NY LLC, spearheaded obstruction of federal restitution through the dissipation and concealment of numerous assets. Together with his father, Defendant Thomas Andreadakis, Leo orchestrated a constructive trust action falsely accusing Plaintiff of embezzlement—using his authority as CEO of Copper Services LLC to initiate and direct litigation through commercial counsel while Tom was incarcerated. During this period, Leo simultaneously transferred commercial contracts, concealed racehorse holdings, and benefited from SBA and IRS misreporting.

Leo and Tom also performed commercial MEP work for private clients off the books, including at 7 Longwood Road in Sands Point, NY, and Miss Lily's at 132 West Houston Street in Manhattan. Although this work occurred prior to Tom's 2021 federal plea, it contributed to the company's inability to pay payroll withholding taxes and was part of the broader pattern of income concealment underlying the $17 million in losses later claimed on Copper's 2021 tax return.

Until Copper Services LLC began using T-Sheets in 2019, Plaintiff had no access to verifiable records confirming the existence of off-the-books jobs. Prior to that, any concerns she raised would have been based solely on personal observation or secondhand information, rendering them hearsay and easily dismissed. Only after T-Sheets data became available was she able to substantiate patterns of concealed labor and unreported income. When Plaintiff's daughter confronted Tom in 2020 regarding the off-the-books work, he threatened to kill her—further reinforcing Plaintiff's fear, isolation, and silence.

Meanwhile, Justice Goodstein, despite receiving verified evidence—including tax records, plea admissions, loan certifications, and affidavits documenting nominee transfers—refused to

compel disclosure, rule on pending motions, or intervene as federally encumbered assets were systematically dissipated.

This case is not about money. Plaintiff seeks no compensation. She seeks justice, referral, and a declaration of the truth: that she was used, silenced, and criminally framed in a system that not only failed to protect her, but participated in her erasure.

## NATURE OF THE ACTION

1. This is a civil rights and federal enforcement obstruction action brought under 42 U.S.C. §§ 1983 and 1985 and the Fourteenth Amendment to the United States Constitution. The case arises from a sustained pattern of judicial suppression, fraudulent asset transfers, financial misrepresentation, procedural obstruction and retaliatory abuse of process—all committed under color of state law to frustrate restitution enforcement obligations owed to the United States, deny Plaintiff access to the courts, and obstruct enforcement of a federal restitution order imposed after a criminal conviction in the Eastern District of New York.

2. The complaint alleges obstruction of federal restitution enforcement under 18 U.S.C. § 3613, which authorizes the United States to collect restitution in the same manner as a tax lien. Defendants concealed assets, diverted income, ceased paying rent on federally encumbered property and transferred commercial contracts—both of which were used to secure over $4.5 million in SBA loans—then falsely claimed the lease was fraudulent and the contracts had been dissipated to evade liability and frustrate enforcement.

3. Plaintiff submitted sworn evidence of this contradiction—including SBA loan certifications, tax records, and affidavits documenting nominee structuring, lease misuse, and fraudulent conveyances—to the New York Supreme Court. Despite this, the presiding judge refused to rule, allowed foreclosure to proceed, and suppressed further filings while the only remaining restitution-encumbered marital assets were dissipated.

4. The complaint also alleges a violation of 18 U.S.C. § 3664(k), which requires defendants under federal restitution orders to report any material change in financial condition to the sentencing court and the U.S. Attorney's Office. This includes new income, asset transfers, changes in operational control, or receipt of loan proceeds. Defendants failed to report numerous such changes following the entry of judgment in United States v. Andreadakis, No. 2:21-cr-00155

(EDNY), including corporate control transfers, successor entity formation, and the continued execution of over $130 million in contracts.

5. Defendants also concealed nominee ownership of more than 70 racehorses generating active income, failed to disclose a 2021 tax return claiming a $17.7 million bad debt deduction—flagged as potentially improper by IRS Criminal Investigation Agent Darjania—and withheld these records in both federal and state proceedings. No motion to adjust restitution was filed, and no notice was given to enforcement authorities, despite ongoing asset dissipation and financial gain.

6. These failures—combined with affirmative misrepresentations, nominee structuring, and the suppression of restitution-relevant records—impaired the government's ability to enforce recovery under 18 U.S.C. § 3613 and may violate additional federal statutes including 18 U.S.C. §§ 1001, 1503, and 1505.

7. Plaintiff further alleges that Justice Jeffrey A. Goodstein and court staff identified as John Does 1–5 enabled and sustained the obstruction of federal restitution enforcement by refusing to adjudicate motions, compel disclosure, or halt the dissipation of federally encumbered property. Beginning in October 2024, Plaintiff submitted verified tax records, plea agreements, affidavits, and financial evidence documenting nominee transfers, lease misuse, and concealed equine assets. Despite this record, the court—through judicial inaction and administrative suppression—allowed foreclosure to proceed, removed filed motions without consent, and failed to act on multiple sworn requests, thereby denying Plaintiff due process and access to courts under the Fourteenth Amendment.

8. Plaintiff seeks declaratory and injunctive relief against both state actors and private parties who coordinated to deprive her of federally protected rights. She seeks no monetary damages. Instead, she asks this Court to affirm that she was wrongfully targeted, procedurally silenced, and falsely accused after decades of coercion and concealment. Defendant Thomas Andreadakis attempted to shift blame onto Plaintiff for his own conduct, while Defendant Leo Andreadakis—acting as his agent—spearheaded retaliatory litigation and directed a constructive trust action accusing Plaintiff of embezzlement. Although Plaintiff provided documentary proof to the state court disproving these claims, including tax filings and nominee evidence, Justice Goodstein refused to intervene. His silence in the face of ongoing violations allowed federally encumbered property to be lost, and the false narrative against Plaintiff to persist. She now respectfully requests that this

Court declare her rights were violated and refer the matter to federal enforcement agencies for investigation.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction pursuant to **28 U.S.C. § 1331** (federal question), **28 U.S.C. § 1343(a)(3)** (civil rights), and **28 U.S.C. §§ 2201 and 2202** (declaratory and injunctive relief). This action arises under the Constitution and laws of the United States, including **42 U.S.C. §§ 1983 and 1985**, the **Fourteenth Amendment**, and federal enforcement statutes including **18 U.S.C. §§ 3613 and 3664(k)**. Plaintiff also alleges conduct that, if proven, may violate federal criminal laws including **18 U.S.C. §§ 1001, 1503, and 1505**, as well as provisions of the Internal Revenue Code and Small Business Administration regulations. Although Plaintiff does not seek criminal prosecution, she requests appropriate referral to federal oversight and enforcement agencies.

10. Plaintiff previously attempted to obtain relief through an Article 78 mandamus proceeding filed in the New York State Appellate Division, Second Department, which was assigned Docket No. AD-2025-06831. Although the Verified Petition and supporting exhibits were filed and docketed, the Court declined to sign the proposed Order to Show Cause. As a result, the matter was not set down for hearing or decision, and no adjudication on the merits occurred. Because no meaningful state remedy remains available and the underlying harm continues, Plaintiff now seeks relief from this Court under federal law.

11. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to this action occurred in Nassau and Queens Counties, both of which are located within the Eastern District of New York. Venue is also proper because the underlying federal criminal case—*United States v. Thomas Andreadakis, No. 2:21-cr-00155 (EDNY)*—was prosecuted in this District, and the restitution obligations arising from that case are central to this action.

12. Plaintiff does not seek federal review of any matrimonial rulings or domestic relations determinations. However, to the extent that non-matrimonial claims arise from the same operative facts—including nominee structuring, coordinated abuse of process, and the obstruction of federal restitution enforcement—this Court may exercise supplemental jurisdiction under 28 U.S.C. § 1367(a). These issues include, but are not limited to, Plaintiff's

civil counterclaims in the constructive trust action, retaliatory lease litigation, and related foreclosure efforts.

13. Plaintiff has standing to bring this action because she has suffered concrete, particularized, and ongoing injury that is fairly traceable to the conduct alleged and redressable by the relief sought in this Court.

## PARTIES

14. Plaintiff Helene Andreadakis is a natural person residing in the State of New York. She appears *pro se* and withholds her specific residential address due to documented safety concerns involving named Defendants. For service and filing purposes, she uses the care-of address: 41-19 248th Street, Little Neck, NY 11363.

15. Defendant Justice Jeffrey A. Goodstein is a Justice of the Supreme Court of the State of New York, Nassau County. He is sued in both his official and individual capacities for acts and omissions taken under color of state law. Located at 200 Old Country Rd, Mineola, NY 11501.

16. Defendant Thomas Andreadakis, a/k/a Tommy Andreadakis, a/k/a Tom Telemahos Andreadakis, is Plaintiff's estranged husband, currently on supervised release under federal sentence and residing at the Brooklyn Residential Reentry Management (RRM) facility. His legal residence is listed as 13803 13th Avenue, Whitestone, NY 11357. He is sued in his individual capacity for orchestrating a scheme to suppress Plaintiff's access to courts, interfere with her property rights, and obstruct restitution enforcement through nominee structuring and fraudulent litigation.

17. Defendant Leo Andreadakis, a/k/a Leonidas Andreadakis, is Plaintiff's son. He is sued in his individual capacity for knowingly assisting in the dissipation of federally encumbered assets, the suppression of Plaintiff's legal claims, and the misuse of judicial process in coordination with other Defendants. He resides at 300 Herb Hill Road, Apt. 207, Glen Cove, New York 11542, and may be served at that address.

18. Defendants John Does 1–5 are state court clerks, administrative staff, or other public employees whose identities are currently unknown but who materially participated in the suppression of Plaintiff's filings, the manipulation of the court record, or the obstruction of Plaintiff's access to judicial relief. They are sued in their individual capacities for acts taken under color of law.

19. Defendant Copper Services LLC is a New York limited liability company with a principal place of business located at 10-01 37th Avenue, Long Island City, New York 11101. It served as the original operating entity for the commercial work, contract income, and federal loan certifications described throughout this Complaint. It is named as a defendant based on its central role in initiating false litigation against Plaintiff, executing federal loan certifications under penalty of perjury, and participating in the dissipation of federally encumbered income and assets. Copper Services LLC is named solely for purposes of equitable relief, declaratory accountability, and federal referral. Plaintiff does not name individual members of the LLC at this time.

20. Paramount Services of NY LLC is a successor entity operated by Defendants Thomas and Leo Andreadakis. Upon information and belief, it was formed to divert contracts, conceal income, and continue operations of Copper Services LLC while evading federal restitution enforcement. Paramount functions as a nominee or alter ego of Copper and was not disclosed in prior federal or matrimonial proceedings. Paramount Services is located at 10-01 37th Ave, L.I.C. NY 11101.

21. Defendants Acquisition Capital LLC and Acquisition Debt Bridge LLC are lending entities believed to be organized under the laws of New York State and engaged in the business of issuing and servicing high-interest, secured commercial loans. In 2020, Acquisition Capital LLC extended a $3 million hard-money loan collateralized by the subject property—10-01 37th Avenue, Long Island City—which was already partially encumbered by a federal restitution obligation under 18 U.S.C. § 3613, as the property constituted marital property subject to equitable distribution in connection with the federal sentencing of Defendant Thomas Andreadakis. The proceeds of the loan were used, in part, to satisfy Defendants' prior state tax liabilities and obligations related to Defendant Thomas Andreadakis's pending federal sentence. Acquisition Capital LLC subsequently assigned the loan to Acquisition Debt Bridge LLC, which is the current holder of the note and mortgage, which has initiated foreclosure proceedings. Upon information and belief, both entities had knowledge—actual or constructive—of the property's federal encumbrance arising from its marital status, and the pending federal sentencing. Despite this, Acquisition Debt Bridge LLC continues to pursue foreclosure without regard to Plaintiff's objections, the restitution interest held by the United States, or the concealed nominee transactions and financial misrepresentations described herein. Defendants Acquisition Capital, LLC and Acquisition Debt Bridge, LLC, upon information and belief, are located at 32-75 Steinway St, Astoria, NY 11103

*The City of New York Department of Transportation on Information and belief, is located at 14406 94th Avenue, Jamaica, NY 11435*

# FACTUAL ALLEGATIONS

## A. FEDERAL RESTITUTION FRAMEWORK AND CONCEALMENT

22. Plaintiff incorporates by reference two prior state court filings that contain verified factual records central to the allegations herein:

    (a) First, Plaintiff's Verified Petition for Writ of Mandamus filed in *Andreadakis v. Goodstein*, App. Div. 2d Dep't, Docket No. 2025-06831, is attached as **Exhibit A**. The additional evidentiary submissions filed or pending filing in that action — including Exhibits N and Exhibits AA through AZ — are incorporated by reference as NYSCEF Doc Nos. 4 through 30. These records are part of the public docket and subject to judicial notice pursuant to Fed. R. Evid. 201(b)(2).

    (b) Second, Plaintiff's Verified Answer with Affirmative Defenses and Counterclaims in *Copper Services LLC v. Andreadakis*, Index No. 727153/2023 (NYSCEF Doc No. 125), is attached as **Exhibit B**. All supporting exhibits filed in that action (NYSCEF Doc Nos. 126–151), including Exhibits A through AH, are hereby incorporated by reference. These records are part of the public docket and subject to judicial notice pursuant to Fed. R. Evid. 201(b)(2).

    (c) Due to file volume constraints, Plaintiff has not reattached those exhibits here, but respectfully requests that the Court take judicial notice of the Article 78 record in its entirety, as preserved and available through the NYSCEF system.

23. Plaintiff Helene Andreadakis is the estranged spouse of Thomas Andreadakis ("Tom"), who was convicted of federal tax-related offenses in *United States v. Andreadakis*, No. 2:21-cr-00155 (E.D.N.Y.), and sentenced to restitution enforceable under 18 U.S.C. § 3613. That statute authorizes the United States to collect restitution in the same manner as a tax lien, creating a continuing legal interest in the defendant's assets. **(This document was filed as Exhibit A to Plaintiff's Verified Answer with Affirmative Defenses and Counterclaims in *Copper Services LLC v. Andreadakis*, Index No. 727153/2023 (NYSCEF Doc No. 125), and is incorporated by reference herein.)**

24. The restitution order remains unpaid.

25. Plaintiff and Defendant Thomas Andreadakis have not filed joint federal tax returns for the last approximately 40 years of their marriage.

26. Around 2019, after receiving a legal summons, Tom asked their daughter to join the company in a full-time capacity to help restructure its operations.

27. In or around June 2020, Plaintiff's daughter confronted Tom about apparent financial misconduct and off-the-book jobs.

28. In response, Tom threatened to kill her.

29. Shortly thereafter, Plaintiff's daughter further alerted her to concealed commercial activity and financial irregularities involving Tom and their son, Leo Andreadakis ("Leo"). Although Plaintiff was initially unable to verify the full extent of misconduct and feared retaliation, she began preserving documents and gathering evidence.

30. Following Tom's conviction, Plaintiff uncovered a coordinated effort by Tom and Leo to obstruct enforcement by diverting contracts, concealing assets, and initiating false litigation. Operating through Copper Services LLC ("Copper") and successor entities such as Paramount Services of NY LLC ("Paramount"), Tom and Leo transferred—or intended to transfer—Copper's commercial contracts without disclosure to the sentencing court or the U.S. Attorney's Office.

31. Plaintiff was never informed of material changes in Tom's financial condition, despite the obligations imposed by 18 U.S.C. § 3664(k) following his sentencing.

32. In 2021, Copper filed a corporate tax return claiming a $17.7 million bad debt deduction—despite ongoing contract execution and continued income from successor entities. The deduction was flagged by IRS Criminal Investigation Agent Darjania as potentially improper, but Defendants never disclosed this filing to the sentencing court nor did they move to adjust restitution obligations as required under 18 U.S.C. § 3664(k). **(This document was filed as Exhibit N to Plaintiff's Verified Answer with Affirmative Defenses and Counterclaims in *Copper Services LLC v. Andreadakis*, Index No. 727153/2023 (NYSCEF Doc No. 139), and is incorporated by reference herein.)**

33. During this same period, Tom and Leo concealed ownership of more than 70 racehorses, several of which generated significant income. Plaintiff later discovered that ownership had been transferred to nominee stables or affiliated entities, shielding the assets from federal restitution enforcement. These transfers were not disclosed in federal or state proceedings, despite Plaintiff's repeated requests for discovery, including filings in the matrimonial action

(*Andreadakis v. Andreadakis*, Index No. 800818/2023) and the constructive trust case (*Copper Services LLC v. Andreadakis*, Index No. 727153/2023). **(This document was filed as Exhibit E to Plaintiff's Verified Answer with Affirmative Defenses and Counterclaims in *Copper Services LLC v. Andreadakis*, Index No. 727153/2023 (NYSCEF Doc No. 130), and as Exhibit N in the Article 78 proceeding *Andreadakis v. Goodstein*, App. Div. 2d Dep't, Docket No. 2025-06831 (NYSCEF Doc No. 4), and is incorporated by reference herein.)**

34. Copper also submitted Paycheck Protection Program (PPP) loan applications to the U.S. Small Business Administration in 2020 and 2021, falsely certifying a 25% reduction in revenue in order to obtain a second-draw loan. These certifications—made under penalty of perjury—were inconsistent with internal financial records, IRS filings, and actual operational income. These discrepancies were documented and submitted in both the matrimonial action (*Andreadakis v. Andreadakis*, Index No. 800818/2023) and the constructive trust case (*Copper Services LLC v. Andreadakis*, Index No. 727153/2023). **(This document is submitted here as Exhibit C and also appears within Exhibit A to Plaintiff's Verified Petition in *Andreadakis v. Goodstein*, App. Div. 2d Dep't, Docket No. 2025-06831 (NYSCEF Doc No. 1), and within Exhibit I in *Copper Services LLC v. Andreadakis*, Index No. 727153/2023 (NYSCEF Doc No. 134). It is incorporated by reference herein.)**

### B. LEASE MISUSE, CONTRACT DIVERSION, AND RACEHORSES

35. Despite receiving full federal loan forgiveness, Tom ceased fixed rental payments to Carlen Realty LLC in 2021—a marital entity that owned the commercial property at 10-01 37th Avenue, Long Island City, and managed multiple business obligations—even though the PPP fund had been allocated for rental payments to Carlen through SBA certifications and submissions. These misrepresentations may constitute violations of 18 U.S.C. § 1001, 26 U.S.C. § 7206, and applicable loan fraud statutes.**( This fact is demonstrated in Exhibit A (attached hereto), which also appears as NYSCEF Doc No. 1 in Andreadakis v. Goodstein, App. Div. 2d Dep't, Docket No. 2025-06831, and was previously submitted in Andreadakis v. Andreadakis, Index No. 800818/2023, as part of Motion Sequence #005, which included the SBA Second Draw application and the Carlen Realty rent ledger showing certified payment allocations for 10-01 37th Avenue.)**

36. In 2023, after filing for divorce, Tom ceased all rental payments on the commercial lease, despite the property being subject to equitable distribution and, therefore, federal restitution enforcement under 18 U.S.C. § 3613. **(See Exhibit A.)**

37. After Tom's incarceration, Leo Andreadakis continued to illegally occupy the premises at 10-01 37th Avenue, Long Island City, from 2024 through the present, refusing to pay rent or cure arrears despite no legal tenancy, no lease with Carlen Realty LLC, and no court order permitting possession. As confirmed in emails submitted in *Andreadakis v. Andreadakis*, Index No. 800818/2023 (NYSCEF Doc No. 143), Leo's counsel admitted that Leo had contacted the foreclosure lender, proposed a transfer of the building into a new LLC co-owned with Helen, and sought to refinance the defaulted mortgage — all while failing to pay any rent to Carlen Realty. These communications concede that Leo remained in physical occupancy during a period of active foreclosure litigation and mounting unpaid arrears, while using that occupancy as leverage in proposed ownership and refinancing negotiations.**( See Exhibit D, also filed as NYSCEF Doc No. 143 in *Andreadakis v. Andreadakis*, Index No. 800818/2023, and incorporated by reference herein.)**

38. As a result, this ongoing deliberate nonpayment by Tom and Leo—carried out with full knowledge of the lease terms, SBA certifications, and federal obligations—has directly caused mortgage default and triggered a pending commercial foreclosure on the only remaining real estate asset not previously liquidated. That property, located at 10-01 37th Avenue, Long Island City, was already encumbered solely to satisfy Tom's federal restitution obligations and related state payroll tax liabilities. The foreclosure action, *Acquisition Debt Bridge LLC v. Carlen Realty LLC et al.*, Index No. 711019/2024, seeks to extinguish Carlen Realty's interest based on uncontested default dating back to July 1, 2023, and unpaid principal and accruing default interest exceeding $3.8 million. **(See Exhibit E, filed as NYSCEF Doc No. 27 in *Acquisition Debt Bridge LLC v. Carlen Realty LLC*, Index No. 711019/2024, and incorporated by reference herein.)**

39. This ongoing deliberate nonpayment, combined with the concealment of equine assets transferred to nominee owners and affiliates including Leo, constitutes a coordinated effort to dissipate federally encumbered property, frustrate restitution collection, and obstruct future enforcement through strategic depletion of Tom's financial estate, including all commercial operating entities and remaining real property.

40. As detailed above in paragraphs 29-30, and in violation of 18 U.S.C. § 3664(k), Defendants failed to disclose multiple material changes in financial condition that occurred after the entry of the federal restitution order in *United States v. Andreadakis*, 2:21-cr-00155 (E.D.N.Y.). These included the transfer of control over Copper Services LLC's operations to Leo Andreadakis **(See Exhibit F, Travelers Insurance application and signature certification page)**, the formation of successor entities including Paramount Services of NY LLC, the continued execution of approximately $130 million in contracts secured by Copper, and the concealment of significant personal and commercial assets. Additionally, Defendants concealed valuable equine assets—including over 70 racehorses—some of which continued to generate income during the federal enforcement period. Ownership of these horses was transferred to nominee stables or third-party affiliates, further shielding them from government recovery. None of these changes were reported to the sentencing court or the U.S. Attorney's Office, and the 2021 Copper tax return was never produced in the matrimonial proceedings, despite mandatory disclosure obligations under DRL § 236(B). This pattern of nondisclosure materially impaired the government's ability to recover restitution. **(These facts are demonstrated in Exhibit A (attached hereto), which includes materials previously filed as NYSCEF Doc Nos. 130 and 135 in *Copper Services LLC v. Andreadakis*, Index No. 727153/2023, and as Exhibit N in *Andreadakis v. Goodstein*, App. Div. 2d Dep't, Docket No. 2025-06831 (NYSCEF Doc No. 4), and are incorporated by reference herein.)**

## C. PROCEDURAL SUPPRESSION IN MATRIMONIAL AND COSNSTRUCTIVE TRUST ACTIONS

41. Plaintiff further alleges that the New York State judiciary, through Justice Jeffrey A. Goodstein, enabled and sustained this obstruction by refusing to act on motions, filings, and documentary evidence submitted to the court beginning in October 2024. These filings included verified tax records, federal plea agreements, business control documentation, and sworn affidavits detailing nominee transfers, equine concealment, contract diversion, and asset dissipation. Despite this record—and the clear connection between the matrimonial proceedings and the concealment of federally encumbered property—Justice Goodstein failed to compel disclosure, issue rulings, or halt the foreclosure of a property already partially encumbered to satisfy Tom's restitution. The court's inaction, despite full knowledge of the facts, materially impaired Plaintiff's access to the

courts, violated her rights to due process and equal protection, and facilitated the continued dissipation of both marital and federally encumbered property under color of state law. **(See Exhibit A.)**

42. This pattern of judicial inaction constitutes a denial of due process and access to courts under the Fourteenth Amendment and actionable misconduct under 42 U.S.C. § 1983. In doing so, Justice Goodstein aided and abetted the obstruction of federal restitution enforcement by permitting the concealment and dissipation of federally encumbered assets through judicial suppression, procedural deferral, and selective inaction under color of law.

43. Despite procedural compliance, several motions remained unresolved for months, including Motion Sequence #005, an emergency OSC concerning federally encumbered property. After being properly filed, signed, and calendared, MSQ #005 was later marked "Withdrawn" in the court's internal system without Plaintiff's consent, notice, or written stipulation. Plaintiff never authorized any withdrawal, and her prior counsel expressly denied initiating it. Court staff later acknowledge that the motion had been removed from the calendar based on a miscommunication involving "discussions with criminal counsel," despite no written agreement to hold the motion in abeyance. **(See Exhibit A.)**

44. Upon information and belief, the withdrawal was executed by either Defendant Goodstein or a member of his staff, John Does 1–5, without any record entry or judicial ruling. This off-the-record manipulation of the docket further impaired Plaintiff's ability to protect federally encumbered assets, obstructed the court's own recordkeeping obligations, and contributed to Plaintiff's exclusion from meaningful judicial review. **(See Exhibit A.)**

45. Motion Sequence #005 had already been signed on October 16, 2024, and uploaded to NYSCEF as Doc No. 153. However, rather than proceeding to adjudication, the Court inexplicably re-signed and re-uploaded the identical Order to Show Cause on December 10, 2024, as NYSCEF Doc No. 161. Principal Court Attorney Steven Maffei previously advised that the motion would be presented, but no legal explanation was given for the delay or duplication. As a result, the return date was reset to January 22, 2025, and the motion clock was restarted. **(See Exhibit A.)**

46. This delay permitted $60,000 per month in default interest to accrue on the federally encumbered commercial building and prevented Plaintiff from refinancing, transferring, or escrowing the asset to preserve the remaining equity—despite the fact that Defendants Tom and Leo were intentionally dissipating the property's value, and the Court had been made aware of this in

Motion Sequence #005. This docket manipulation—undocumented, irregular, and court-created—directly impaired Plaintiff's ability to protect a property tied to federal restitution enforcement. **(See Exhibit A.)**

47. Between October 2024 and June 2025, Plaintiff submitted more than a dozen motions to the matrimonial court addressing foreclosure, asset concealment, civil fraud, and nominee structuring. These filings were supported by sworn documentation and submitted in compliance with CPLR § 2219 and 22 NYCRR § 202.7(f). The Honorable Jeffrey A. Goodstein presided over these matters as both assigned trial judge and Supervising Judge of the Matrimonial Part in Nassau County. **(These filings and the court's failure to adjudicate them are documented in Plaintiff's Verified Petition Exhibit A and supporting exhibits filed in the Appellate Division as NYSCEF Doc No. 1 and NYSCEF Doc Nos. 4–30 in** *Andreadakis v. Goodstein*, **App. Div. 2d Dep't, Docket No. 2025-06831, which are incorporated by reference herein.)**

48. Plaintiff's submissions included evidence of nominee transfers, coercive control, lease suppression, SBA loan misreporting, and contract diversion—all tied to Defendant Thomas Andreadakis's ongoing restitution obligations. By failing to adjudicate these filings, Justice Goodstein enabled further dissipation of federally encumbered property and shielded false filings by opposing parties from judicial scrutiny.

49. On May 21, 2025, Plaintiff appeared for a hearing regarding emergency consolidation (MSQ #016). Although she was permitted to speak on the record, the Court denied temporary relief and issued a verbal Shreve order barring Plaintiff from filing further motions without leave. Plaintiff was further instructed to file related motions in Queens Supreme Court, despite the matters being entirely matrimonial in nature and directly implicating federal restitution obligations. The Court restricted Plaintiff's ability to pursue further relief while continuing to delay adjudication of pending matters—reinforcing procedural asymmetry and denying her meaningful access to enforce federal protections. **(See Exhibit G, transcript of proceedings in** *Andreadakis v. Andreadakis*, **Index No. 800818/2023, dated May 21, 2025. This transcript also appears within Exhibit A to Plaintiff's Verified Petition in** *Andreadakis v. Goodstein*, **App. Div. 2d Dep't, Docket No. 2025-06831 (NYSCEF Doc No. 1), and is incorporated by reference herein.)**

50. Justice Goodstein's reclassification of Plaintiff's emergency OSCs from "Returnable" to "Submission Only," without order or explanation, combined with the suppressed calendar

activity and unexplained re-signing of MSQ #005, constitutes a pattern of docket manipulation designed to stall adjudication of federally relevant motions. This conduct suppressed Plaintiff's ability to prevent dissipation of restitution-encumbered marital assets and obstructed enforcement under 18 U.S.C. §§ 3613 and 3664(k).

## D. JUDICIAL SUPPRESSION AND ARTICLE 78 TIMELINE

51. On June 10, 2025, Plaintiff filed a Verified Petition and Emergency Order to Show Cause in the Appellate Division, Second Department (Docket No. 2025-06831), seeking mandamus relief to compel judicial rulings on motions that had been pending for over seven months, including motions supported by exhibits documenting federal restitution suppression. The Court declined to sign the Order to Show Cause and dismissed the petition without hearing or written explanation, leaving Plaintiff without a viable state forum to protect federally encumbered property from foreclosure. **(See Exhibit A, Verified Petition with Exhibits, and Exhibit H, Declination Order and NYSCEF confirmation notice, both filed in *Andreadakis v. Goodstein*, App. Div. 2d Dep't, Docket No. 2025-06831, and incorporated by reference herein.)**

52. Tom and Leo engaged in a multi-year conspiracy to obstruct federal restitution enforcement by coordinating fraudulent conveyances, nominee transfers, false filings and procedural manipulation across multiple judicial forums. This conspiracy, which dates back at least to 2013—including concealed commercial projects such as Miss Lily's in Manhattan—was carried out through a deliberate pattern of asset concealment, affidavit misrepresentation, and forum specific procedural abuse, enabling Defendants to divert federally encumbered income streams and evade enforcement oversight.

53. This coordinated conduct constitutes a civil conspiracy among Defendants Thomas Andreadakis, Leo Andreadakis, and other unnamed actors to interfere with Plaintiff's constitutional rights in violation of 42 U.S.C. § 1985(2) and (3). The objective of the conspiracy was to obstruct federal restitution enforcement, suppress Plaintiff's access to the courts, and deprive her of protected property interests by means of fraudulent conveyances, procedural manipulation, and retaliatory litigation. Each Defendant acted in furtherance of this conspiracy by submitting false affidavits, concealing federally encumbered assets, and abusing judicial process across matrimonial, civil and appellate courts. As a result, Plaintiff was excluded from meaningful participation, falsely

accused of misconduct, and prevented from defending federally encumbered assets—including the 10-01 37th Avenue property and the commercial operations of Copper Services LLC—despite their direct connection to restitution enforcement obligations.

54. Defendant Leo Andreadakis, acting in concert with his father, used his position as CEO of Copper Services LLC to execute fraudulent transfers of contracts, business operations, and corporate control to successor entities including Paramount Services of NY LLC. Although Leo directed litigation on behalf of Copper and coordinated the Constructive Trust action, he never submitted a personal affidavit in any proceeding. Instead, Defendant Thomas Andreadakis—while incarcerated—submitted sworn affidavits falsely representing ownership and control of marital and commercial assets. This strategic imbalance allowed Leo to steer litigation while avoiding perjury exposure and enabled both Defendants to suppress material facts regarding nominee transfers, asset concealment, and restitution obstruction. Their actions materially contributed to the concealment of federally encumbered assets and the obstruction of restitution enforcement.

55. Plaintiff now faces imminent foreclosure on the federally encumbered commercial asset—10-01 37th Avenue, Long Island City, New York. In 2020, this property was used to secure a $3 million hard-money loan from Defendant Acquisition Capital LLC, which was used to refinance prior obligations arising from Defendants' New York State tax liabilities and Defendant Thomas Andreadakis's federal restitution judgement. Upon information and belief, Acquisition Capital LLC had actual or constructive knowledge of the property's federal encumbrance and failed to conduct adequate diligence regarding the underlying lease certifications, lease terms, SBA filings or restitution enforcement risks associated with the sentencing order in *United States v. Andreadakis*, No. 2:21-cr-00155 (E.D.N.Y.). **(See Exhibit E.)**

56. Subsequently, Acquisition Capital LLC sold the note and mortgage to Defendant Acquisition Debt Bridge LLC, which is now pursuing foreclosure against the property. Upon information and belief, Acquisition Debt Bridge LLC, took assignment of the loan with knowledge—or reckless disregard—of the property's encumbrance under 18 U.S.C. § 3613 and the federal restitution interests implicated therein. The pending foreclosure action threatens to irreversibly dissipate federally encumbered property and extinguish Plaintiff's legal and equitable rights without adjudication of the restitution and nominee fraud issues raised herein. **(See Exhibit E.)**

57. In or around 2025, Plaintiff formally requested that Acquisition Capital LLC and its successor, Acquisition Debt Bridge LLC, enforce the commercial lease between Copper Services LLC and Carlen Realty LLC by pursuing a CPLR § 3213 motion for summary judgment in lieu of complaint under the personal guarantee. This lease governed Copper's occupancy of the mortgaged premises and served as the basis for rent-related certifications used to obtain over $4.7 million in forgivable SBA loans. Plaintiff's May 12, 2025 communication specifically proposed a Limited Assignment of Enforcement Rights authorizing her to pursue rent recovery from Copper, solely in her individual capacity, to offset tax defaults and protect the mortgage collateral—while preserving the lender's lien priority and foreclosure posture. Despite having actual or constructive knowledge that Copper's sustained nonpayment jeopardized the secured asset and obstructed federal restitution enforcement, Acquisition declined to act. Instead, Acquisition Debt Bridge LLC continued to pursue foreclosure proceedings without regard to Plaintiff's objections, the restitution interest held by the United States, or the nominee structuring and financial concealment issues raised herein. **(See Exhibit I, May 12, 2025 email from Plaintiff to Salvatore Acquista, on file with *Acquisition Debt Bridge LLC v. Carlen Realty LLC*, Index No. 711019/2024, and incorporated by reference herein.)**

58. Separately, Defendants, Thomas Andreadakis, Leo Andreadakis and Copper Services LLC, leveraged a commercial lease between Copper Services LLC and Carlen Realty LLC to obtain approximately $4.7 million in forgivable Paycheck Protection Program (PPP) loans through the U.S. Small Business Administration. **(See Exhibit A.)**

59. After receiving and benefiting from the full amount of federal relief, Defendants—including Thomas Andreadakis, Leo Andreadakis, and Copper Services LLC—ceased all rental payments in 2023. They then claimed the lease had been fraudulently induced, in an effort to void rent obligations and evade liability, including federal restitution enforcement. As of this filing, approximately $1.7 million is due and owing, half of which is marital and subject to a federal tax lien. Despite certifying the lease as valid to secure PPP eligibility, the property is now in foreclosure, with no judicial review of the sworn filings documenting this contradiction. The resulting default triggered mortgage arrears, and the asset—encumbered under 18 U.S.C. § 3613—now risks dissipation, materially obstructing enforcement of Tom's federal sentence. **(See Exhibit A.)**

60. From 2018 through 2021, Defendants diverted commercial income and concealed operational control of Copper Services LLC and affiliated entities to its successor entities such as Paramount Services of NY LLC. These original entities performed publicly funded work, including affordable housing and charter school construction, likely financed in whole or in part by federal programs administered through HUD, HPD, HFA or SBA. Defendants failed to disclose these contracts, distributions, or ownership transfers in filings with the IRS, SBA, or the federal sentencing court, in violation of restitution compliance obligations. **(See Exhibit A.)**

61. Paramount Services of NY LLC ("Paramount") is a successor entity created and operated by Defendants Thomas and Leo Andreadakis to conceal income, divert contracts, and continue commercial operations previously performed by Copper Services LLC. Paramount shares the same operational scope, project types, and labor force as Copper, but was never disclosed in federal sentencing proceedings or matrimonial financial affidavits. Upon information and belief, Paramount was created to receive diverted MEP contracts originally secured by Copper while shielding ongoing revenue from restitution enforcement under 18 U.S.C. §§ 3613 and 3664(k). Plaintiff had no role in Paramount's formation or operation, and only discovered its existence after uncovering internal documents and project overlap. The use of Paramount as a nominee or alter ego of Copper forms part of the broader conspiracy to obstruct enforcement, suppress disclosure, and defraud federal and state oversight bodies. **(See Exhibit A.)**

62. Copper Services LLC received over $130 million in contracts during this period, while falsely certifying eligibility for multiple SBA Paycheck Protection Program (PPP) loans and claiming a $17.7 million bad debt deduction on its 2021 tax return. These submissions—made under penalty of perjury—misrepresented Copper's financial position, diverted funds away from restitution recovery and concealed income subject to federal enforcement.

63. The 2021 tax return was never produced in the matrimonial proceeding. Plaintiff has no reason to believe it was disclosed to the U.S. Attorney's Office or the sentencing court in *United States v. Andreadakis*, 2:21-cr-00155 (EDNY), despite its clear relevance to restitution enforcement. Although Plaintiff submitted sworn motions seeking its production, the state court has never ruled or compelled disclosure.

64. These filings also suggest undisclosed ownership transfers and omitted financial data that violated mandatory reporting obligations under 18 U.S.C. §§ 3613 and 3664(k). Even if submitted to the IRS, the filings remain part of a calculated and deliberate conspiracy by

Defendants to obstruct enforcement, evade restitution, and mislead both federal and state authorities through sophisticated financial manipulation.

## E. DISSIPATION ENABLED THROUGH JUDCIAL INACTION, SUPPRESSION, AND NOMINEE TRANSFERS

65. From the outset of the matrimonial proceeding (Index No. 800818/2023), the New York State Supreme Court was on notice that Defendant Thomas Andreadakis had been federally convicted of tax-related crimes, and was subject to an active restitution obligation under 18 U.S.C. §§ 3613 and 3664.

66. As detailed in federal sentencing submissions filed in *United States v. Andreadakis*, No. 2:21-cr-00155 (E.D.N.Y.), Defendant Thomas Andreadakis, through counsel James Druker, represented to the Court that Copper Services LLC held approximately **$32 million in active contracts** and an additional **$97 million in contracted pipeline work** as of mid June 2023. These filings—including a June 23, 2023 adjournment request and contract schedule filed at ECF Nos. 21, 21-1, 22, and 22-1—relied explicitly on the continued bonding and operation of these contracts to argue that restitution could be satisfied. **(See *United States v. Andreadakis*, E.D.N.Y., 2:21-cr-00155, ECF Nos. 21–22-1, incorporated herein by reference.)**

67. Defendant Thomas Andreadakis filed for divorce in April 2023 in the Supreme Court of Nassau County (Index No. 800818/2023).

68. Upon that filing, the statutory **Automatic Orders** under Domestic Relations Law § 236(B)(2)(b) and 22 NYCRR § 202.16-a took immediate effect, prohibiting either party from transferring, encumbering, or disposing of any marital property without prior court order or written agreement. At that moment, the full value of the marital estate—including all commercial contract assets of Copper Services LLC previously submitted by Defendant Thomas Andreadakis's criminal counsel James Druker—was presumptively frozen under law.

69. Plaintiff disclosed these letters and supporting documents to the New York State Supreme Court (Matrimonial Part, Index No. 800818/2023) on or about October 2023, placing the court on clear notice that federally encumbered commercial assets were at risk of dissipation.

70. Despite this, no receiver was appointed by Defendant Justice Jeffrey A. Goodstein, no escrow was ordered, and the court allowed the asset to proceed toward foreclosure.

71. These same contracts were later transferred to Paramount Services of NY LLC, a successor entity operated by Defendant Leo Andreadakis, without judicial intervention.

72. As detailed in the state-filed Affirmation at NYSCEF Doc No. 389, ¶¶ 61–72, Plaintiff presented an estimated valuation of Defendant's Copper Services LLC of $75–105 million based on conservative $15M projected EBITDA at divorce commencement in or about June of 2023, built entirely on the use of federally encumbered marital assets to preserve active contracts and government bonding. **(See Appellate Division, Second Department, Docket No. 2025-06831, NYSCEF Doc No. 23 incorporated herein by reference.)**

73. Yet the state court took no action to escrow proceeds, appoint a receiver, or freeze successor entities despite this knowledge.

74. Instead, Defendants enabled post-filing dissipation of the marital estate while Plaintiff was procedurally silenced through verbal Shreve orders and docket suppression.

75. These judicial omissions facilitated the continued concealment of restitution-relevant assets, enabled Defendants to retain full commercial benefit from private-public funded contracts, and stripped Plaintiff of her ability to preserve her interest in the only remaining marital property: the commercial building at 10-01 37th Avenue, which she was coerced into using as security for both the contract bonding and a $3 million hard money loan used solely for Defendants benefit.

76. As a result of the court's refusal to act, Defendants were able to execute a coordinated nominee transfer scheme, funneling contracts and operations through Paramount Services of NY LLC and other affiliated entities while continuing to litigate under the name of Copper Services LLC in a separate forum.

77. The dissipation of the estate was thus not merely foreseeable—it was enabled under color of judicial authority.

## F. CONSPIRACY TO OBSTRUCT RESTITUTION ENFORCEMENT AND DEFRAUD THE UNITED STATES

78. Beginning in 2019, Copper implemented T-Sheets labor tracking software, which provided Plaintiff with verifiable records for the first time. Previously, she had been unable to substantiate claims of off-the-books work or nominee billing practices, as her concerns were dismissed without documentation. The T-Sheets data revealed systematic off-ledger labor, including

projects that predated Tom's federal plea, which helped establish the long-running nominee pattern referenced above.

79. Using these records, Plaintiff identified concealed commercial MEP work performed off the books by Tom and Leo Andreadakis, including at 7 Longwood Road in Sands Point, New York. These projects were unreported to tax authorities, concealed from federal enforcement agencies, and would have impacted restitution enforcement if disclosed. This conduct also constitutes criminal income tax fraud under 26 U.S.C. § 7201 and related statutes, as it involved the intentional omission of taxable income, coordinated concealment, and ongoing misrepresentation to both federal and state authorities. **(See materials previously filed as Exhibit AC in** *Copper Services LLC v. Andreadakis*, **Index No. 727153/2023 (NYSCEF Doc No. 154), and as Exhibit N in** *Andreadakis v. Goodstein*, **App. Div. 2d Dep't, Docket No. 2025-06831 (NYSCEF Doc No. 4), which are incorporated by reference herein.)**

80. This conduct is not merely deceptive—it is the crux of Defendants' conspiracy: a coordinated and criminal effort to defraud the United States, suppress enforcement, and deprive Plaintiff of her constitutional rights through systemic tax evasion, false filings, and judicial misdirection. The concealment of off-the-books income, the fabrication of false affidavits, the manipulation of court process, and the strategic misrepresentation of lease and ownership interests formed an integrated enterprise designed to obstruct restitution enforcement and undermine Plaintiff's legal standing across multiple judicial forums. This conspiracy violates 18 U.S.C. § 371 (conspiracy to defraud the United States), 26 U.S.C. § 7201 (willful attempt to evade or defeat tax), and 42 U.S.C. § 1985(2)–(3) (conspiracy to interfere with civil rights).

81. In or around 2020, after Plaintiff's daughter confronted Defendant Thomas Andreadakis about these concealments, he issued a violent death threat—corroborated by affidavit, a contemporaneous witness, and police report. This event reinforced a longstanding pattern of coercion and intimidation that had prevented Plaintiff from coming forward for decades and constituted further evidence of financial abuse and intent to obstruct justice under both federal and state law. This pattern is further corroborated by a separate recorded incident involving Thomas Andreadakis in or around **August 2018**, in which he issued threats of violence, financial sabotage, and corporate collapse. That transcript is attached hereto as **Exhibit J** and has been previously filed as:

     a.  **Exhibit B** to Plaintiff's Affirmation in Support in *Andreadakis v. Andreadakis*, Index No. 800818/2023 (Motion Sequence #011) hand delivered to the Court Clerk which never uploaded to NYSCEF,

     b.  **Exhibit AS** to Plaintiff's Verified Petition in *Andreadakis v. Goodstein*, App. Div. 2d Dep't, Docket No. 2025-06831 (NYSCEF Doc No. 23), and

     c.  **NYSCEF Doc No. 392** in *Andreadakis v. Andreadakis*, Index No. 800818/2023, Plaintiff subsequently uploaded to preserve the record.

82. In addition to concealing commercial income, Defendants failed to disclose significant equine assets subject to federal restitution. During the enforcement period, Tom continued to breed, sell, and profit from approximately 70 racehorses, many transferred to nominee owners or third-party affiliates. One horse earned over $1.1 million in racing purses— none of which was reported in matrimonial or federal disclosures.

83. Plaintiff submitted evidence of racehorse concealment in multiple sworn filings before Justice Goodstein, including proof of transfers to Leo Andreadakis and entities acting as holding proxies. Despite the clear connection between these assets and Tom's restitution obligations, the court refused to adjudicate or require disclosure. These omissions allowed substantial revenue to be diverted away from recovery while Plaintiff was accused of asset concealment without evidentiary basis. **(See Exhibits N and AS to Plaintiff's Verified Petition in *Andreadakis v. Goodstein*, App. Div. 2d Dep't, Docket No. 2025-06831, filed as NYSCEF Doc Nos. 4 and 23, and incorporated by reference herein.)**

84. Concurrently, Defendants submitted PPP loan forgiveness applications falsely certifying continued occupancy, payroll maintenance, and revenue losses—based on the same lease they later claimed was fraudulent. This contradiction further supports the allegation of strategic misrepresentation to extract federal relief while evading liability.

85. Leo Andreadakis filed business insurance certifications in 2021 and 2022 listing himself as CEO of Copper Services LLC and certifying its ongoing operations at 10-01 37th Avenue. These certifications were submitted to insurers and government contractors for bonding, payroll compliance, and liability coverage—despite Leo later denying operational in Court through Tom's affidavit NYSCEF Doc. 192. These filings confirm Leo's nominee role in a federally funded commercial operation, even as he coordinated legal efforts to disclaim ownership and

default on lease obligations after having signed a personal guarantee on the triple-net lease. (**See Exhibit F.**)

86. Despite the central role of 10-01 37th Avenue in generating SBA relief and housing a federally encumbered asset, Defendants repeatedly misrepresented ownership of the property in state and federal filings. In the *Constructive Trust Action* (Index No. 727153/2023), Tom submitted affidavits asserting that Plaintiff owned or controlled the property. In the *Lease Fraud Action* (Index No. 715796/2023) and the *TRO Proceeding* (Index No. 714245/2024), Defendants sought to void the lease by denying its legitimacy, while simultaneously using that same lease to obtain SBA funds and to enjoin Plaintiff from collecting rent. In the *Matrimonial Action* (Index No. 800818/2023), Tom asserted marital rights in the property as a distributable asset. These contradictory positions—advanced deliberately across multiple judicial forums—suppressed the evidentiary record, misled enforcement agencies, and impaired federal oversight.

87. Following his sentencing, Tom continued to coordinate business operations and litigation strategy from custody and during his supervised release. Acting through Leo and nominee entities, he retained control over contract pipelines, finances, and asset movement. This coordination has continued through the present and materially obstructed enforcement by concealing income, ownership, and nominee.

88. In December 2023, while Tom remained under federal sentence, a civil action styled *Copper Services LLC v. Helene Andreadakis* was initiated in Queens Supreme Court seeking a constructive trust over the 10-01 37th Avenue property. Although nominally filed in Copper's name, the litigation was coordinated by Leo Andreadakis, who at the time served as CEO and directed all lease and litigation strategy. From federal custody, Tom submitted sworn affidavits asserting ownership claims that directly contradicted positions previously taken in the matrimonial and federal proceedings—including the assertion that Plaintiff had "looted" $11 million from the company between 1998 and 2023, which he blamed for his inability to pay withholding taxes. These claims were advanced while Defendants continued to conceal off-the-books labor, nominee-controlled assets, and tax-relevant income—furthering the objectives of their ongoing conspiracy to obstruct enforcement and mislead judicial and regulatory authorities.(**See Exhibit B.**)

89. After Plaintiff began filing sworn rebuttals, Defendants and the state court initiated a pattern of procedural suppression across Motion Sequences #005 through #016 in the matrimonial action.

These included the silent withdrawal of MSQ #005, arbitrary return date delays, selective NYSCEF processing, suppression of emergency Orders to Show Cause, and ultimately a verbal Shreve order following the May 21, 2025 hearing.**(See Exhibit A and Exhibit G.)**

90. The procedural irregularities coincided with Plaintiff's efforts to expose the contradiction between the constructive trust allegations and the lease certified in federal PPP filings. Plaintiff submitted evidence that the lease had been used to obtain over $4.7 million in federal relief and was later called fraudulent by the same parties. The court's failure to adjudicate this contradiction allowed Defendants to continue withholding restitution-relevant records while pursuing foreclosure.

91. In response to the ongoing procedural suppression and asset dissipation, Plaintiff filed a Verified Petition and Emergency Order to Show Cause under Article 78 in the Appellate Division, Second Department (Docket No. 2025-06831), seeking mandamus relief to compel rulings on MSQs #005 through #016. The petition detailed judicial inaction, evidentiary suppression, NYSCEF irregularities, and the risk of losing federally encumbered property. **(See Exhibit A, Verified Petition for Mandamus Relief, and Exhibits N through AZ, filed in *Andreadakis v. Goodstein*, App. Div. 2d Dep't, Docket No. 2025-06831, NYSCEF Doc Nos. 1 and 4–30, and incorporated by reference herein.)**

92. On June 10, 2025, the Appellate Division declined to sign the Order to Show Cause and returned the submission without hearing, opinion, or entry on the docket. The Verified Petition and 6,500 pages of supporting documentation were never reviewed. The Clerk's Office later confirmed that the Court had refused to act—leaving Plaintiff without access to state appellate enforcement. **(See Exhibit H.)**

93. As of this filing, 10-01 37th Avenue remains under imminent threat of foreclosure, with a summary judgment hearing scheduled for July 7, 2025. The property is partially encumbered by federal restitution obligations under 18 U.S.C. § 3613. Its dissipation would permanently impair federal recovery, judicial oversight, and Plaintiff's ability to access records necessary to enforce restitution.

94. The coordinated inaction by the state court, the misrepresentations submitted by Defendants, and the manipulation of NYSCEF and docket procedures have worked in tandem to deprive Plaintiff of court access, equal protection, and her ability to defend federally encumbered property. Plaintiff has exhausted all available state remedies, sought appellate relief, and submitted sworn

evidence. The continued suppression of her motions and the foreclosure risk constitute an ongoing violation of 42 U.S.C. §§ 1983 and 1985, and obstruct enforcement under 18 U.S.C. §§ 3613, 3664(k), and 1505.

95. A settlement conference is scheduled in the matrimonial action for June 17, 2025. Based on prior conduct, Plaintiff reasonably believes the proceeding will be used to retroactively validate false filings, consolidate procedural control, and suppress objections to the dissipation of federally encumbered property. To date, the court has refused to rule on any of Plaintiff's emergency motions, including those addressing foreclosure, SBA fraud, and asset concealment. No formal order has been entered resolving any motions between MSQs #005 and #016. **(See Exhibit A.)**

96. In the matrimonial action (Index No. 800818/2023), Plaintiff further alleges that a key affidavit submitted by Defendant Thomas Andreadakis was notarized by his fiancée and soon-to-be-wife, Denise Felipe-Adams, a senior executive official in the New York City Mayor's Office. The notarization occurred outside Plaintiff's presence and under circumstances that are facially improper under notarial ethics rules. At the time, Felipe-Adams held the title of Co-Executive Director of the Mayor's Office of Innovation and Emerging Markets, as published in *City & State New York* on January 6, 2025. **(See Exhibit A, Verified Petition for Mandamus Relief, and Exhibits N through AZ, filed in *Andreadakis v. Goodstein*, App. Div. 2d Dep't, Docket No. 2025-06831, NYSCEF Doc Nos. 1 and 4–30, and incorporated by reference herein.)**

97. The affidavit was later relied upon by Justice Jeffrey A. Goodstein in connection with rulings that suppressed Plaintiff's filings and declined to compel discovery. Given Felipe-Adams's romantic and marital relationship with Defendant Andreadakis, and her role in facilitating contested filings central to this litigation, Plaintiff submits that any representation of Justice Goodstein by the New York State Attorney General's Office presents a serious conflict of interest requiring recusal or referral to independent counsel.

## FIRST CAUSE OF ACTION

**Denial of Due Process**
**(Against Justice Jeffrey Goodstein and John Does 1–5)**
**(42 U.S.C. § 1983 – Fourteenth Amendment)**

98. Plaintiff realleges and incorporates by reference Paragraphs 1 through 97 as if fully set forth herein.

99. At all relevant times, Defendant Justice Jeffrey A. Goodstein acted under color of state law in his capacity as a New York State Supreme Court Justice and as Supervising Judge of the Matrimonial Part in Nassau County. Defendants John Does 1–5 are court officers or staff who participated in the challenged conduct.

100. Beginning in or around October 2024 and continuing through the present, Defendant Goodstein and John Does 1–5 engaged in a sustained pattern of procedural suppression, docket manipulation, and deliberate refusal to adjudicate Plaintiff's motions, filings, and emergency applications.

101. These pattern of misconduct included, but was not limited to:

    a. failing to rule on more than a ten motions supported by sworn documentation; and

    b. marking Motion Sequence #005 "withdrawn" without Plaintiff's knowledge, consent or stipulation; and

    c. selectively accepting filings from opposing counsel while obstructing Plaintiff's; and

    d. re-signing and re-uploading identical Orders to Show Cause (MSQ #005) without legal explanation to delay adjudication; and

    e. delaying adjudication of sworn motions tied to foreclosure, restitution, and federal relief; and

    f. issuing a verbal "Shreve" order restricting Plaintiff's future motion rights after she raised federal restitution enforcement concerns by alerting the court to the dissipation of the marital estate.

102. These acts and omissions were not isolated or accidental. They formed a coordinated course of conduct designed to suppress Plaintiff's legal standing, deny her meaningful access to the courts, and facilitate the dissipation of federally encumbered property without judicial review.

103. As a direct result, Plaintiff was denied procedural due process in violation of the Fourteenth Amendment to the United States Constitution. She was excluded from meaningful judicial participation, denied timely access to court rulings, and rendered unable to defend real and personal property subject to federal restitution enforcement under 18 U.S.C. §§ 3613 and 3664(k).

104. Plaintiff has no adequate remedy at law. The state court has refused to act, and the Appellate Division declined to hear her Article 78 mandamus petition. Declaratory and injunctive relief are necessary to remedy the constitutional violations and prevent further harm arising from continued suppression of judicial process under color of state law.

## SECOND CAUSE OF ACTION

**Denial of Access to Courts**
**(Against Defendant Justice Jeffrey A. Goodstein and John Does 1-5)**
**(42 U.S.C. § 1983 – First and Fourteenth Amendments)**

105. Plaintiff realleges and incorporates by reference Paragraphs 1 through 104 as if fully set forth herein.

106. Plaintiff engaged in protected activity under the First Amendment by submitting formal motions, sworn affidavits, evidentiary documentation, and emergency filings in the matrimonial and related civil proceedings between October 2024 and June 2025. These filings addressed foreclosure risk, obstruction of federal restitution enforcement, nominee structuring, and concealment of federally encumbered assets.

107. Defendant Justice Jeffrey A. Goodstein, acting under color of state law, and with the support of court personnel identified as John Does 1–5, engaged in a sustained pattern of conduct that obstructed Plaintiff's access to meaningful judicial process. This included:

   a. refusing to rule on critical motions; and

   b. removing a properly filed motion (MSQ #005) from the docket without Plaintiff's consent or withdrawal; and

   c. delaying emergency relief; and

   d. suppressing filings that exposed potential federal violations.

108. The suppression was particularly acute with respect to Plaintiff's efforts to prevent the foreclosure of property encumbered by federal restitution obligations. Her filings—supported by financial documentation, loan certifications, and tax records—were delayed, ignored or suppressed without explanation or adjudication.

109. In May 2025, after Plaintiff submitted multiple filings documenting restitution obstruction and requesting judicial coordination, the Court issued a verbal Shreve order prospectively restricting Plaintiff's right to file further motions without prior permission. This order

functionally excluded Plaintiff from further continued participation in matters affecting her federally protected rights, while leaving opposing counsel unconstrained.

110. Plaintiff then sought mandamus relief in the Appellate Division, submitting a Verified Article 78 Petition and Emergency Order to Show Cause supported by over 6,500 pages of sworn documentation. The Appellate Division declined to sign the Order to Show Cause and dismissed the petition without hearing, review, or written opinion.

111. As a result, Plaintiff was and still is procedurally barred from defending against the loss of federally encumbered property, from enforcing compliance with restitution obligation under 18 U.S.C. §§ 3613 and 3664(k), and from asserting her constitutional rights in any state forum.

112. Defendants' actions have caused and continue to cause irreparable harm by obstructing Plaintiff's access to the courts in violation of the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983. Federal relief is required to restore access, preserve restitution-relevant assets, and prevent further deprivation of Plaintiff's constitutional rights.

## THIRD CAUSE OF ACTION

**Conspiracy to Interfere with Civil Rights**
**(Against Defendants Thomas Andreadakis, Leo Andreadakis, Copper Services LLC, Paramount Services of NY LLC, Justice Jeffrey A. Goodstein and John Does 1-5)**
**(42 U.S.C. § 1985(2) & (3))**

113. Plaintiff realleges and incorporates by reference Paragraphs 1 through 112 as if fully set forth herein.

114. Beginning no later than 2023, upon information and belief, Defendants Thomas Andreadakis, Leo Andreadakis, and Copper Services LLC acted in concert with Justice Jeffrey A. Goodstein and personnel identified as John Does 1–5, engaging in conduct that jointly obstructed Plaintiff's access to the courts and concealed federally encumbered property. The pattern of procedural suppression, asymmetrical treatment of false and late filings, and coordinated timing across multiple proceedings supports an inference of unlawful agreement or tacit coordination.

115. This conspiracy included, but was not limited to:

    a.   initiating the Constructive Trust action while Tom was under federal sentencing restrictions; and

    b.   coordinating litigation through Leo Andreadakis without Leo submitting a single sworn affidavit; and

    c.   submitting conflicting sworn statements by Thomas Andreadakis regarding asset ownership; and

    d.   using court resources to delay and suppress motions tied to restitution enforcement; and

    e.   misusing procedural tools, such as motion withdrawals and Shreve orders, to prevent Plaintiff from asserting her rights.

116. The purpose and effect of this coordinated conduct was to:

    a.   deprive Plaintiff of access to courts; and

    b.   silence her attempts to disclose restitution obstruction; and

    c.   facilitate fraudulent conveyances and nominee transfers; and

    d.   insulate federally encumbered assets from scrutiny by both the courts and enforcement authorities.

117. Defendants' actions were not isolated or accidental. They reflect a shared objective to undermine Plaintiff's legal position, erode her credibility, and eliminate her procedural ability to interfere with the concealment and dissipation of assets subject to federal restitution obligations.

118. These acts were motivated, at least in part, by Plaintiff's position as a factual witness to decades of coercion, nominee structuring, off-the-books labor, and financial misconduct. Although Plaintiff possessed firsthand knowledge of suspicious transactions and organizational patterns, she lacked verifiable documentation until 2019 and was financially dependent on Defendant Thomas Andreadakis throughout the marriage. Any earlier disclosure would have been dismissed as hearsay and exposed her to severe retaliation. Once armed with proof, Plaintiff attempted to assert her rights and pursue equitable relief—but Defendants, leveraging superior financial resources, institutional connections, and procedural influence, acted swiftly to suppress her efforts, prevent her testimony, strip her of all financial income, and block enforcement of federal restitution laws tied to the concealed property and income.

119. As a direct result of this conspiracy, Plaintiff has been excluded from meaningful litigation, targeted with retaliatory filings, denied discovery and access to evidence, and subjected to defamatory inference by both sworn statements and judicial silence. She has been procedurally suppressed and deprived of due process through deliberate manipulation of judicial mechanisms.

120. The foregoing conduct constitutes a conspiracy to interfere with civil rights in violation of 42 U.S.C. § 1985(2) and (3). No adequate state remedy exists. Declaratory and injunctive relief is necessary to prevent further obstruction, expose the misuse of judicial process, and protect Plaintiff's constitutional rights.

## FOURTH CAUSE OF ACTION

### Declaratory Judgment
### (Against All Defendants)
### (28 U.S.C. § 2201 – Federal Declaratory Judgment Act)

121. Plaintiff realleges and incorporates by reference Paragraphs 1 through 121 as if fully set forth herein.

122. An actual and justiciable controversy exists between Plaintiff and Defendants concerning the legality, constitutionality, and enforceability of the actions taken under color of law and in coordination with private parties to suppress Plaintiff's access to courts, obstruct restitution enforcement, and conceal federally encumbered property.

123. Pursuant to 28 U.S.C. § 2201, Plaintiff seeks a declaratory judgement stating that:

    a. Defendants, under color of state law, violated Plaintiff's rights under the First and Fourteenth Amendments to the U.S. Constitution by denying her access to courts and meaningful due process; and

    b. The procedural suppression and docket manipulation described herein—including the unauthorized withdrawal of motions, suppression of emergency filings, and refusal to adjudicate timely filings—constitute ongoing violations of constitutional and statutory rights; and

    c. The coordination between judicial actors and private parties, including Defendants Thomas and Leo Andreadakis, Copper Services LLC, and court personnel, constitutes a conspiracy to interfere with Plaintiff's civil rights in violation of 42 U.S.C. § 1985; and

  d.  The real property located at 10-01 37th Avenue, Long Island City, New York, and related commercial lease instruments, are subject to federal restitution enforcement under 18 U.S.C. §§ 3613 and 3664(k), and judicial suppression of motions to protect this property has impaired the federal government's ability to lawfully enforce restitution owed by Defendant Thomas Andreadakis; and

  e.  Plaintiff has exhausted available state remedies, and federal jurisdiction is appropriate to declare and redress the constitutional violations described herein.

124. Declaratory relief is necessary to publicly affirm Plaintiff's constitutional rights, create a judicial record of the misconduct she endured, and preserve restitution-relevant evidence from further suppression, foreclosure, or dissipation.

## **FIFTH CAUSE OF ACTION**

**Injunctive Relief**
**(Against All Defendants)**
**(28 U.S.C. § 2202 – Federal Declaratory Judgment Act – Ancillary Relief)**

125. Plaintiff realleges and incorporates by reference Paragraphs 1 through 124 as if fully set forth herein.

126. Pursuant to 28 U.S.C. § 2202, Plaintiff seeks injunctive relief as ancillary to her claim for declaratory judgment under 28 U.S.C. § 2201, and to prevent irreparable harm caused by the continued suppression of judicial access, concealment of federally encumbered assets, and imminent foreclosure of property used to secure federal loan funds and partially subject to restitution enforcement under 18 U.S.C. § 3613.

127. Plaintiff has no adequate remedy at law. The matrimonial court has refused to rule on motions addressing federal restitution obstruction; the Appellate Division declined to review Plaintiff's Article 78 Verified Petition; and the state court system continues to permit the progression of foreclosure and retaliatory litigation without adjudicating Plaintiff's sworn evidence.

128. Absent injunctive relief, Plaintiff faces:

  a.  The irreversible loss of federally encumbered marital property; and

  b.  Continued exclusion from court proceedings affecting her constitutional and property rights; and

    c.  And the concealment of SBA loan fraud, concealed equine assets, nominee structuring, and tax misrepresentations from federal authorities.

129. Plaintiff respectfully requests a preliminary and permanent injunction to:

    a.  Enjoin enforcement of any foreclosure judgment or sale of the property located at 10-01 37th Avenue, Long Island City, New York, pending judicial review and federal referral; and

    b.  Prohibit Defendants from pursuing or enforcing constructive trust relief or lease invalidation claims premised on contradictory SBA certifications or sworn misstatements; and

    c.  Compel the production of restitution-relevant financial records withheld in state court, including tax returns, SBA loan applications, and bank account records; and

    d.  Prohibit any further suppression of Plaintiff's motions or filings in the matrimonial or constructive trust proceedings, pending further order of this Court; and

    e.  Direct appropriate referral of the matter to federal enforcement agencies, including the U.S. Department of Justice, Internal Revenue Service – Criminal Investigation Division, and U.S. Small Business Administration – Office of Inspector General.

130. The requested injunctive relief is necessary to preserve the status quo, prevent further concealment of federally encumbered assets, and protect Plaintiff from irreparable harm caused by continued denial of access to courts, due process, and constitutional protections.

## SIXTH CAUSE OF ACTION

**Abuse of Legal Process**
**(Against Defendants Thomas Andreadakis, Leo Andreadakis, Copper Services LLC, and Paramount Services of NY LLC)**
**(Equitable Relief – Retaliatory Litigation and Nominee Misuse)**

131. Plaintiff realleges and incorporates by reference Paragraphs 1 through 130 as if fully set forth herein.

132. After Defendant Thomas Andreadakis was sentenced in *United States v. Andreadakis*, 2:21-cr-00155 (E.D.N.Y.), Defendants Thomas and Leo Andreadakis caused a civil action to be filed in the name of Copper Services LLC styled *Copper Services LLC v. Helene*

*Andreadakis*, Index No. 727153/2023 (Sup. Ct. Queens County), seeking to impose a constructive trust over Plaintiff's interest in the property located at 10-01 37th Avenue, Queens County, New York.

133. The action was initiated and controlled by Leo Andreadakis while acting as CEO of Copper Services LLC. Although Leo possessed operational control and access to all relevant records, he purposely did not submit any sworn affidavits. Instead, Thomas Andreadakis—while incarcerated—submitted affidavits contradicting prior representations made to the SBA, the federal sentencing court, and the matrimonial court.

134. The litigation was commenced after Defendants had used the same lease to certify eligibility for approximately $4.7 million in forgivable Paycheck Protection Program (PPP) loans from the U.S. Small Business Administration (SBA). After securing federal relief, Defendants reversed position and falsely claimed the lease was fraudulent, initiating litigation against Plaintiff based on this contradiction.

135. The Constructive Trust action constitutes an abuse of legal process and a misuse of Copper Services LLC as a nominee entity for retaliatory litigation. Its purpose was not to vindicate legitimate legal claims, but to suppress Plaintiff's efforts to expose restitution-related misconduct, shift liability, and shield the leaseholder from financial and regulatory enforcement—particularly in light of personal guarantees executed by Defendants in the presence of notaries and witnesses, which directly contradict their litigation claims.

136. Plaintiff seeks a declaration that the Constructive Trust action was an abuse of process, and equitable relief barring further use of Copper Services LLC as a litigation proxy to suppress Plaintiff's legal rights or to obscure the enforcement consequences of prior false certifications and concealed financial conduct.

## SEVENTH CAUSE OF ACTION

### Equitable and Judicial Estoppel
**(Against Defendants Thomas Andreadakis, Leo Andreadakis, Copper Services LLC, and Paramount Services of NY LLC)**
**(To bar contradictory lease claims after federal certification)**

137. Plaintiff realleges and incorporates by reference Paragraphs 1 through 136 as if fully set forth herein.

138. Defendants Thomas and Leo Andreadakis, through Copper Services LLC, executed and submitted certifications to the U.S. Small Business Administration (SBA) in connection with Paycheck Protection Program (PPP) loan applications in 2020 and 2021. These certifications affirmed that Copper Services lawfully held a lease with Carlen Realty for 10-01 37th Avenue and that rent obligations were current and valid.

139. These certifications, made under penalty of perjury, explicitly relied on the enforceability of the lease agreement with Carlen Realty LLC and designated rent payments as eligible uses of PPP funds.. The SBA and participating lenders approved and forgave these loans in reliance on Defendants' sworn statements.

140. After receiving and benefitting from approximately $4.7 million in forgivable federal relief, Defendants subsequently initiated litigation—styled Copper Services LLC v. Helene Andreadakis, Index No. 727153/2023—claiming that they very same lease was fraudulently induced and therefore void.

141. This inconsistent position was advanced to evade rental obligations, strip Plaintiff of her defenses in the foreclosure proceeding, and suppress her ability to enforce escrow, occupancy, or equitable protection. The building—partially encumbered by restitution under 18 U.S.C. § 3613— was thereby rendered defenseless to dissipation.

142. Defendants are judicially estopped from asserting that the lease is invalid. They certified its legitimacy under oath to obtain federal forgiveness, and those certifications were accepted by the U.S. government to disburse funds. Having gained a benefit from one position, they cannot now disavow it in court to avoid accountability.

143. Alternatively, Defendants should be equitably estopped from repudiating the lease after obtaining millions in federal relief while benefiting from the use of the space. Plaintiff reasonably relied on the lease's enforceability to protect the asset, prevent default, and defend against foreclosure. Defendants' later repudiation was not merely misleading —it was part of a calculated conspiracy to displace liability and undermine Plaintiff's legal position.

144. This lease-centered contradiction lies at the core of Defendants' **broader conspiracy**: to use the lease as valid collateral for federal certification, then disavow it to eliminate financial obligations, evade enforcement, and render Plaintiff defenseless—while continuing to occupy the premises, litigate through a nominee entity, and facilitate the forced transfer of federally encumbered property through auction at foreclosure.

145. Furthermore, in the Constructive Trust action (Index No. 727153/2023), Defendant Thomas Andreadakis swore under oath that he only had a 49% ownership interest in Copper Services LLC, (Index No. 727153/2023, NYSCEF Doc No. 1, *p. 6, ¶ 27* which incorporated in its entirety by reference herein*)*, "Tommy is and was at all times, owned 49% of Copper, DPHC, and DPH-LLC, with another member who owned 51% of these entities. Helen never had any ownership interest in Copper, DPHC, or DPH-LLC.". However, in Copper's 2018 IT-204 New York State tax return *(See Exhibit K attached hereto and filed as Exhibit M to Plaintiff's Verified Answer in Copper Services LLC v. Andreadakis, Index No. 727153/2023, NYSCEF Doc No. 138, which incorporated in its entirety by reference herein),* the entity was declared a sole proprietorship in 2016 and 2017, which by definition implies 100% individual ownership. These two positions are legally incompatible. Either the tax filing or the Verified Complaint is false. If Copper was a sole proprietorship in those years, it could not have had two members—let alone split ownership between 49% and 51%. This contradiction supports judicial estoppel, raises serious questions of misrepresentation in both tax and court filings, and undermines the legitimacy of the constructive trust claim and all nominee litigation based on that representation.

146. However, in November 2017, while Copper Services LLC was represented in NYS tax filings as a **sole proprietorship** for the 2016 and 2017 tax years (Index No. 727153/2033, see NYSCEF Doc No. 138, IT-204), Defendant Thomas Andreadakis and Frank Sbeglia executed a document titled "Agreement for Helen Andreadakis" **(See Exhibit L),** which identifies them both as **members of the LLC** and describes the internal governance of the entity. The tax classification and the internal agreement are legally irreconcilable. A sole proprietorship cannot, by definition, have multiple members or require internal operating agreements between multiple stakeholders. This contradiction raises serious questions of tax misrepresentation, nominee misuse, and factual inconsistency in sworn testimony later submitted in support of the Constructive Trust action and PPP certifications. It further supports Plaintiff's claim that Copper was used as a nominee shell, designed to obscure ownership, divert restitution-relevant income, and retaliate against Plaintiff through strategic litigation.

147. Defendants also submitted SBA Paycheck Protection Program (PPP) applications certifying under penalty of perjury that Copper Services LLC experienced a revenue decline exceeding

25% between the second quarter of 2019 and the second quarter of 2020—reporting a drop from $5,942,782 to $2,334,494 in Q2 alone **(see Exhibit C).** However, Copper's 2019 and 2020 IRS Form 1065 tax filings **(See Exhibit M)** tell a different story: gross receipts increased from **$15,891,874 in 2019 to $26,130,904 in 2020, a 64.4% increase**, not a decline. This glaring contradiction raises serious concerns of loan fraud, false statements to a federal agency, and falsified eligibility certifications used to obtain approximately **$1.86 million in fully forgivable federal funds**. It further supports Plaintiff's claims of financial concealment, nominee structuring, and a coordinated effort to obstruct federal restitution enforcement under **18 U.S.C. §§ 3613, 3664(k), 1001, 371, and 7201. (See Exhibit M, 2019–2020 IRS Form 1065 returns filed as Exhibit M to Plaintiff's Verified Answer in *Copper Services LLC v. Andreadakis*, Index No. 727153/2023 (NYSCEF Doc No. 138), and incorporated by reference herein. Although only select pages are cited here for clarity, the full tax returns are incorporated by reference as part of the record.)**

148. Additional proof of Defendants' irreconcilable representations appears in Copper Services LLC's 2018 New York State IT-204 tax return, filed in 2021, which certified under penalty of perjury that Copper operated as a **sole proprietorship in 2016 and 2017**. That same year, Copper also filed a 2020 NYC Net Operating Loss (NOL) Deduction form **(See Exhibit K)**—likewise signed and submitted by CPA Wayne Landau—claiming that Copper had **49% ownership in 2017, and 100% ownership in both 2018 and 2019**, without identifying the owners. These filings are legally incompatible. A sole proprietorship cannot be split into 49/51% ownership, and no corporate reorganization was disclosed. Compounding the inconsistency, Defendant Thomas Andreadakis swore in his 2023 Verified Complaint (Index No. 727153/2023, ¶ 27) that he "only ever owned 49%" of Copper Services LLC, and that Plaintiff "never had any ownership interest." These conflicting declarations across tax filings and court proceedings—submitted under oath—constitute a **constructive nominee structure, deliberate misrepresentation to multiple regulatory bodies**, and a **coordinated conspiracy** to interfere with restitution enforcement and civil rights under **42 U.S.C. § 1985**. They further provide **prima facie evidence** of potential violations of **26 U.S.C. § 7206(1)** (false returns), **18 U.S.C. § 1001** (false statements), and **18 U.S.C. § 371** (conspiracy to defraud the United States). These representations—made to different agencies and courts to serve opposing litigation objectives—demonstrate a calculated misuse

of legal process and factual narrative to evade liability, manipulate enforcement forums, and obstruct Plaintiff's access to the courts. This further supports the application of judicial estoppel and reinforces Plaintiff's claims of nominee structuring, fraud on the court, and abuse of process.

149. Further evidence of the nominee structure and Leo Andreadakis's operational control appears in a signed commercial insurance attestation dated September 28, 2021 **(See Exhibit F)**, in which Leo formally certifies that he is "the President and Chief Executive Officer" of both Copper Services LLC and Paramount Services of NY LLC, with "full authority to act in that capacity and to enter into binding agreements." This declaration was submitted to U.S. Risk, LLC and Travelers Indemnity Company to obtain general liability coverage for both entities. The insurance documents list both Copper and Paramount as co-insured for commercial plumbing operations. These representations were made during the federal restitution enforcement period, directly contradicting the narrative advanced in court filings that Tom Andreadakis retained ownership while Leo had no operational role. Leo's failure to submit any affidavit in the Constructive Trust action—despite acting as CEO for both entities—demonstrates a deliberate effort to conceal his nominee control, shield restitution-relevant income streams, and suppress truthful ownership disclosure. This evidence further supports Plaintiff's claim that Copper and Paramount were used as coordinated nominee vehicles to mislead courts, defraud federal agencies, and eliminate Plaintiff's procedural defenses through asymmetrical litigation strategy.

150. This calculated misuse of judicial process—executed through contradictory affidavits, filings, nominee structuring, and selective forum manipulation—was not undertaken to vindicate legitimate rights, but to obstruct Plaintiff's access to due process and extinguish her property interest without fair adjudication. This conduct constitutes a civil conspiracy to interfere with Plaintiff's constitutional rights in violation of 42 U.S.C. § 1985(3).

151. Plaintiff seeks a declaration that Defendants are judicially and equitably estopped from denying the validity of the lease for purposes of evading rent liability, obstructing federal restitution enforcement, or coercing the loss of federally encumbered property through manipulated foreclosure proceedings under color of law.

## EIGHTH CAUSE OF ACTION

### Obstruction of Federal Restitution Enforcement

### (Against All Defendants)

### (18 U.S.C. §§ 3613, 3664(k); 28 U.S.C. § 1331 – Equitable Jurisdiction)

152. Plaintiff realleges and incorporates by reference Paragraphs 1 through 151 as if fully set forth herein.

153. Plaintiff is a factual witness, document custodian, and former spouse of Defendant Thomas Andreadakis, whose sentence in *United States v. Andreadakis*, No. 2:21-cr-00155 (E.D.N.Y.), included a restitution obligation enforceable under 18 U.S.C. § 3613.

154. Under federal law, the United States may enforce restitution "in the same manner as a tax lien," and any material change in a defendant's financial condition must be disclosed to the sentencing court and the U.S. Attorney's Office pursuant to 18 U.S.C. § 3664(k).

155. Defendants Thomas Andreadakis and Leo Andreadakis, acting individually and through Copper Services LLC and Paramount Services of NY LLC, as well as Acquisition Capital LLC and Acquisition Debt Bridge LLC, engaged in a coordinated course of conduct that concealed assets, diverted income streams, and suppressed financial disclosures directly relevant to federal restitution enforcement. These efforts were aided and sustained through the judicial inaction and procedural manipulation described above.

156. Specific acts obstructing enforcement include, but are not limited to:

    a.  transferring valuable commercial contracts to nominee entities; and

    b.  ceasing rent payments to Carlen Realty LLC while continuing to certify the lease to federal loan programs; and

    c.  submitting a 2021 tax return claiming a $17.7 million bad debt deduction without disclosure to federal authorities; and

    d.  concealing the ongoing operations and income of Copper Services LLC and its successors; and

    e.  initiating retaliatory litigation and false filings in state court to shift liability, evade scrutiny, and block federal recovery.

    f.  Accepting collateral from federally encumbered property with constructive notice of restitution obligations and proceeding toward foreclosure despite documented federal claims raised by Plaintiff.

157. These actions materially impaired the execution of a federal sentence and obstructed lawful restitution enforcement in violation of 18 U.S.C. §§ 3613 and 3664(k). Federal subject matter jurisdiction is proper under 28 U.S.C. § 1331, as the claim arises under federal law and seeks to remedy interference with the United States' statutory enforcement authority.

158. Plaintiff seeks a judicial declaration that Defendants' actions constitute obstruction of federal restitution enforcement and respectfully requests that this Court refer the matter to appropriate federal enforcement authorities, including the U.S. Department of Justice and Internal Revenue Service – Criminal Investigation Division, for further investigation and oversight.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and grant the following relief:

### A. Declaratory Relief

**I.** A declaration pursuant to 28 U.S.C. § 2201 that Plaintiff's constitutional rights under the First and Fourteenth Amendments were violated by Defendant Justice Jeffrey A. Goodstein and court staff acting under color of state law; and

**II.** A declaration that Defendants Thomas Andreadakis, Leo Andreadakis, and Copper Services LLC engaged in a calculated conspiracy to obstruct federal restitution enforcement through nominee structuring, false affidavits, and misuse of state judicial procedures, in violation of 18 U.S.C. §§ 3613, 3664(k), and 42 U.S.C. § 1985; and

**III.** A declaration that the Constructive Trust action (Index No. 727153/2023) constitutes an abuse of legal process brought in retaliation for Plaintiff's protected litigation activity and role as a factual witness to tax and restitution-related misconduct; and

**IV.** A declaration that the commercial lease between Copper Services LLC and Carlen Realty LLC was certified under penalty of perjury to obtain approximately $4.7 million in

forgivable SBA loans, and that Defendants are judicially and equitably estopped from later repudiating the lease to evade enforcement or rent obligations; and

**B. Injunctive Relief**

**V.** A preliminary and permanent injunction staying any foreclosure, sale, auction, or involuntary transfer of the property located at 10-01 37th Avenue, Long Island City, NY 11101, including but not limited to actions pursued by or on behalf of Defendant Acquisition Capital LLC and Acquisition Debt Bridge LLC, pending final resolution of this action; and

**VI.** An order enjoining Defendants from prosecuting or enforcing the Constructive Trust action (Index No. 727153/2023) or any related lease-invalidation claims while matters of federal restitution, tax concealment, and nominee fraud remain pending; and

**VII.** An order compelling production of all restitution-relevant records, including but not limited to:

    i.    The 2021 Copper Services LLC tax return; and

    ii.    SBA loan filings and forgiveness applications; and

    iii.    Federal certifications; and

    iv.    Commercial lease agreements; and

    v.    Bank records or transfer documents evidencing nominee control; and

    vi.    All equine records from The Jockey Club associated with Defendants names, aliases or known affiliates such as Lioni Racing Stable, LLC;

**VIII.** An order prohibiting Defendants from using procedural restrictions—including Shreve orders, NYSCEF manipulation, or judicial gatekeeping—to suppress Plaintiff's filings or exclude her from litigation involving federally encumbered assets;

**C. Referral to Federal Oversight and Enforcement Authorities**

**IX.** A judicial referral of the facts, filings and allegations set forth herein to:

    i.    The U.S. Department of Justice, Criminal Division; and

    ii.    The Internal Revenue Service – Criminal Investigation Division; and

    iii.    The U.S. Small Business Administration – Office of Inspector General; and

      iv.     Any other appropriate federal enforcement or oversight authority, for investigation, audit, and prosecution where warranted.

## D. Relief Consistent with Pro Se Representation

**X.** Leave to amend, supplement, or conform this Complaint to the record as additional facts, exhibits, agency determinations, or enforcement developments arise; and

**XI.** Any such other and further relief as this Court deems just, proper, and necessary to vindicate Plaintiff's constitutional rights, prevent the dissipation of federally encumbered property, and ensure equal access to judicial process under federal law.

## CERTIFICATION AND CLOSING

**Under Federal Rule of Civil Procedure 11**, by signing below, I certify to the best of my
knowledge, information, and belief that this complaint:

1) is not being presented for an improper purpose, such as to harass, cause unnecessary
   delay, or needlessly increase the cost of litigation; and
2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or
   reversing existing law; and
3) the factual contentions have evidentiary support or, if specifically so identified, will
   likely have evidentiary support after a reasonable opportunity for further investigation or
   discovery; and
4) the complaint otherwise complies with the requirements of Rule 11.

**For Parties Without an Attorney**

I agree to provide the Clerk's Office with any changes to my address where case-related
papers may be served. I understand that my failure to keep a current address on file with
the Clerk's Office may result in the dismissal of my case.

**Date of signing:** June 16, 2025

**Signature of Plaintiff:**

**Printed Name of Plaintiff:**                    Helene Andreadakis